NORTHERN TRUST COMPANY, Plaintiff-Appellant and Cross-Appellee, *v.* W. E. HANING, Defendant-Appellee and Cross-Appellant.

Third District    No. 81-433

Opinion filed June 10, 1982.

Richard N. Molchan and Timothy L. Bertschy, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

James Walker, Ltd., of Bloomington, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Northern Trust Company appeals from an award of zero dollars damages returned on a verdict in Northern Trust's favor in an action brought by Northern Trust to recover damages for the wrongful holdover of possession by W. E. Haning, tenant of a farm owned by the estate of John J. O'Neil.

Most of the facts of this case are not in dispute. Northern Trust was engaged by the owners of 320 acres in Tazewell County to manage the farm, and since 1970 or 1971, Northern Trust had leased the farm to W. E. Haning under a crop-share lease. The terms of the last lease provided for the owners and Haning, as the operator, to divide the crop expenses and to share the crop on a 50-50 basis for the year beginning March 1, 1979, and ending February 29, 1980. The lease also provided that it would continue from year-to-year unless either party served a written notice on the other party prior to the first day of September preceding the termination date.

During the summer of 1980, the owners of the O'Neil farm decided to put the farm up for sale, and accordingly Northern Trust gave Haning written notice in August of 1979 that the lease would terminate as of February 29, 1980. Both parties agree that the lease was thereby extinguished.

Northern Trust then negotiated with Haning for an interim operating agreement to insure that the necessary tillage and fertilizing would be performed by Haning in the fall and winter to prepare the ground for the next planting season, and also to insure that Haning would operate the farm during the coming year in the event it was not sold. This agreement contained the following provisions:

"1) Operator will perform fall 1979 tillage and will bear one-half of the cost of fertilizer applied in the fall of 1979;

2) Owner must notify Operator by March 1, 1980 of any pending sale of the farm; if Owner does not notify the Operator by March 1, 1980, Operator will be allowed to operate the property on a crop-share agreement for the 1980 crop year under the same terms as the 1979 lease (dated November 14, 1978 and now terminated);

3) If Owner advises Operator by March 1, 1980 that a farm sale is completed or pending, Operator must cease all operations and yield possession of the farm.

4) In the event the Operator must yield possession, Owner shall reimburse Operator for Operator's share of fall 1979 fertilizer expenses; Owner shall also be obligated to pay Operator for all tilling operations performed following the fall 1979 harvest at custom rates as established by the Tazewell County Extension Office."

In February of 1980 the O'Neils notified Northern Trust that a buyer had been obtained, and Max Evans, who was then manager in charge of the O'Neil farm, called Haning on February 11, 1980, to tell him about the pending sale. According to Evans, he told Haning that the farm had been sold to a neighbor, that he should send his bills for tillage work and fertilizer to Northern Trust for payment before closing, and that Evans would find out about when Haning's son would have to give up possession of a house which he occupied on the premises. According to Haning, Evans told him that a buyer might have been found and he would let him know for sure later. Haning also stated that he talked to Ward Freitag sometime after April 1, by which time he knew Freitag had purchased the farm. At that time Freitag asked Haning if he could put tile around the perimeter of the farm in order to improve drainage, and Haning gave his consent.

In the meantime, on March 10, 1980, Northern Trust sent defendant Haning a letter which began "This will confirm our conversation of some 3-4 weeks ago about the final settlement on the O'Neil Farm." The letter requested bills from Haning for the cost of fertilizer applied in the previous fall and a statement listing the acres tilled and the custom rates for tillage practices from the Tazewell County Extension Office. The letter also informed Haning the house could continue to be leased from the purchasers.

Haning refused to surrender possession, claiming that he had leasehold rights to the farm for the coming crop year, and as a consequence, Freitag indicated that he would not complete the sale unless he was given possession. Northern Trust then agreed to lease the farm from Freitag and

to bring legal action to eject Haning from the farm. In the event Haning was not ejected by April 26, 1980, Northern Trust agreed to pay $60,000 in cash rent to Freitag for the period from April 26, 1980, to February 28, 1981. Freitag completed the purchase transaction, and Northern Trust brought a forcible entry and detainer action against Haning on April 8, 1980. The trial date was delayed by Haning's jury demand, so Northern Trust paid the $60,000 cash rent to Freitag, and Haning remained in possession. After the crops were harvested, Haning tendered one-half of the crop to Northern Trust pursuant to the terms of the previous lease. Northern Trust did not refuse, and also paid the owner's share of the expenses, thus realizing $36,526 in partial mitigation of damages.

Haning asserted as an affirmative defense that he was not notified of a sale during the term of the interim agreement because he did not receive a notice in writing before March 1, 1980.

Trial was set for May 18, 1981. On May 6, 1981, Northern Trust requested leave to file an amendment to its complaint consisting of two counts, one of which would assert that Haning's holdover of possession was wilful and the other would assert that Northern Trust was damaged in the amount of $60,000 when it had to pay that amount as cash rent to prevent the sale from failing. Defendant Haning asked for 30 days to respond to the amended complaint, but Northern Trust would not agree to a continuance. The trial court refused leave to amend without a continuance, and the cause proceeded to trial before a jury. At the conclusion of trial the jury returned a verdict finding that Haning had wrongfully withheld possession and assessing zero dollars damages. Northern Trust has appealed from the damages award, and Haning has cross-appealed from the verdict and judgment finding that his possession was wrongful.

Northern Trust contends that the trial court erred in ruling that all evidence concerning "lost profits" must be excluded. According to the report of proceedings, Northern Trust's first farm manager for this farm, Joseph Siggs, testified that a fair cash rental for this property would be $150 per acre for a total of $45,000. He also stated that, if Northern Trust had leased this farm from the owner for $45,000 cash rent, and had farmed it, he would expect to make a profit of $10,000 to $15,000 above the amount of the rent. The trial court ruled that this testimony concerning hypothetical profits would be stricken. Siggs then went on to testify that Haning gave to Northern Trust one-half of the crop at the end of the 1980 season and that Northern Trust sold the crop for $47,233. After deducting expenses of $10,707, Northern Trust realized a net income of $36,526. The fact that actual net income of $36,526 was less than the fair cash rental of $45,000 was due to the fact that crop yield was down in 1980. When Siggs went on to testify that in an average year, the crop share

arrangement would have realized a greater return for the owner, the court sustained an objection to any speculation as to what an average year would be.

When Max Evans, another farm manager of Northern Trust, was called to testify, an offer of proof was made which indicated that, if Northern Trust had been permitted to rent the farm from the owner for $45,000 cash rent, a profit of $10,000 to $15,000 could have been made, over and above the rent paid. Evans would base his computation on actual production figures, actual expenses and customary rates for hiring the work done, and would testify that Northern Trust would have made a total profit of $57,000, from which the $45,000 rent would have to be deducted. Parenthetically, we note that the total net income or profit from Haning's farming operation for the 1980 crop year was $73,052, of which Haning received one-half and Northern Trust received one-half. Thus a total net profit of $57,000 would not appear to be an unreasonable expectation were the owner to hire the work done.

■■ The trial court excluded the Evans' testimony as to lost profit on the ground that it was speculative. We believe the trial court erred. Lost profits from farm operations have been held to be a proper measure of damages recoverable by a farm tenant from whom possession of land was withheld wrongfully. (*Rhodes v. Sigler* (1976), 44 Ill. App. 3d 375, 357 N.E.2d 846.) We can see no reason for denying a farm landlord an opportunity to prove that he could have earned profits over and above a cash rent.

In *Rhodes* we stated:

> "It has long been the law in Illinois that lost profits can be a measure of damages where a business is interrupted, but to properly prove a loss of profits, the business must have been established prior to the interruption so that lost profits were not speculative. * * * [E]vidence was placed before the trial court indicating the ability and experiences of plaintiff as a farmer, as well as his expenses and income for the previous year. Since absolute mathematical certainty is not required to fix the amount of damages [citation], sufficient facts were presented for the trial court to determine that the plaintiff [tenant] was no worse a farmer than the defendants [landlords] and therefore, to determine the profits which the plaintiff was likely to make during the period possession was withheld." 44 Ill. App. 3d 375, 379-80, 357 N.E.2d 846, 850. See also Annot., 32 A.L.R.2d 582, 605 (1953).

Whether Northern Trust was established in the business of farming by hiring custom work done is a question for the trier of fact, along with the determination of what would be the fair rental value and the other elements involved in the determination of damages. By refusing to permit

the jury to consider lost profits, the trial court in effect restricted Northern Trust to recovering a fair rental value, and nothing more, as damages for Haning's wrongful withholding of possession. We believe that ruling was erroneous, and that the award of zero dollar damages must be vacated and the cause remanded for a new trial on the issue of damages.

■■ Northern Trust also contends that the trial court wrongfully refused to give certain jury instructions defining lost profits as an element of damages in this case. The tendered instructions have not been identified or set out in Northern Trust's brief, so we conclude that any such error was waived for purposes of this appeal. However, upon remand the trial court should give appropriate instructions based upon the evidence presented, including a definition of damages recoverable which would include the element of lost profits.

■■ Northern Trust also claims that the verdict of zero damages was improper under the law and public policy since the effect is to permit a holdover tenant to forcibly make himself a partner of the wronged land owner. To permit the tenant to pay no more than the crop share specified in the expired lease would encourage tenants to hold over without fear of legal sanction. Having determined that a new trial on the issue of damages is required because of erroneous rulings of the trial court, we think it unnecessary to consider whether the verdict was contrary to the manifest weight of the evidence or to public policy. Northern Trust also cites certain improper comments made by defendant's trial counsel. We agree that references to Northern Trust "buying" a law suit, made after an objection to such comment had been sustained, were improper. Upon remand, we assume that such improper statements will be avoided.

■■ ■ Finally, Northern Trust also insists that the trial court erred in refusing to permit leave to file an amended complaint which would have added two additional counts. The rule in Illinois has long been that the time for allowing an amendment to a pleading rests within the sound discretion of the trial court whether application for leave to amend is sought after issue has been joined, during trial, or any other time prior to entry of judgment. (*Simmons v. Columbus Venetian Stevens Buildings* (1958), 20 Ill. App. 2d 1, 155 N.E.2d 372.) In the case before us, it is clear that the trial court would have allowed Northern Trust to amend its complaint shortly before trial if Northern Trust would agree to a continuance to permit defendant to respond. Northern Trust refused to agree to an allowance of time for responsive pleadings, and the trial court denied leave to amend. Under such circumstances, we cannot say that the trial court abused its discretion. In fact, the rules of fair play would hardly permit any other ruling at that stage of the proceeding. We see nothing in the record to indicate that the amendments were offered again at the close of the evidence in order to conform the pleadings to the proof.

Hence, we assume that the proposed new counts would have introduced new issues that required time for a response.

Defendant Haning has also filed a cross-appeal from the verdict which found him to have retained possession wrongfully. Defendant contends that he was entitled to a written notice of termination under the contract, which he characterizes as a renewal of the previous year-to-year lease, pursuant to section 5.1 of "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1979, ch. 80, par. 5.1). The statute requires a notice to quit in writing not less than four months prior to the end of the year of letting in order to terminate a year-to-year tenancy of farmland. The statute prohibits a *verbal* waiver of the notice requirement, but does not prevent a written waiver of the requirement.

Clearly the year-to-year tenancy which bound the parties for the year ending February 29, 1979, was terminated by timely notice from Northern Trust to Haning. Thereafter the parties entered into an interim operating agreement which by its terms indicates an intent to be something other than a year-to-year tenancy, and which expressly permits Northern Trust to terminate Haning's possession of the farm at any time prior to March 1, 1980. In order to protect the owners' interest in having the farm ready for planting if the sale did not occur, Northern Trust and Haning executed a contract which waived the farm tenant's statutory right to four months written notice in return for a promise that he would be reimbursed for his labor for tillage and for the cost of fertilizer applied. Since the contract did not specify written notice, Haning must be considered to have waived his right to written notice as well.

The evidence at trial presented a question of fact as to whether Haning was given adequate notice that the land had been sold when he talked to Max Evans on the telephone on February 11, 1980. Although Haning denied that Evans told him that a sale had been arranged, Evans' testimony was clear and unequivocal and was corroborated by a written memorandum made at the time of the call which convinced the trier of fact. Furthermore, the purchaser Freitag testified that Haning talked to him on February 20, 1980, about letting his son stay in the farm house until an expected baby had been born. The evidence supported the jury's verdict in favor of Northern Trust and that verdict is, accordingly, affirmed.

Judgment vacated and remanded, with directions.

STOUDER and HEIPLE, JJ., concur.